IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| PRO-MARK SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY<br><br>Defendant. | Civil Action No. _____ |

# COMPLAINT

Plaintiff Pro-Mark Services, Inc. ("Pro-Mark") by and through its counsel, in support of its Complaint against Defendant Atlantic Specialty Insurance Company ("Atlantic"), alleges as follows:

## NATURE OF THE ACTION

1. Pro-Mark brings this action for breach of contract against its insurer, Atlantic, seeking damages for Atlantic's refusal to honor its duties under an insurance policy it sold Pro-Mark. The policy provides broad coverage for defense costs arising from alleged Wrongful Acts.[1] Specifically, Atlantic wrongly refuses to defend Pro-Mark (and its directors and officers) against covered claims arising from a search warrant and grand jury subpoena. As a result, Pro-Mark has incurred and continues to incur damages. Pro-Mark also seeks a declaration that the search warrant and subpoena triggered Atlantic's coverage obligations under the policy, and therefore Atlantic is responsible for past and future Defense Costs.

---

[1] Capitalized terms shall have the meanings ascribed to them in the policy (**Exhibit A**).

## THE PARTIES

2. Pro-Mark is a corporation organized and existing under the laws of North Dakota, with its principal place of business in West Fargo, North Dakota.

3. Upon information and belief, Atlantic is a New York company, with its principal place of business in Plymouth, Minnesota.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332 because Pro-Mark is not a citizen of the same state as Atlantic, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. Personal jurisdiction in North Dakota is proper because, upon information and belief, at all relevant times, Defendant has been authorized to sell insurance in and has transacted business in North Dakota, including with Pro-Mark as to the policy at issue. Defendant also performed acts within North Dakota for the purpose of realizing pecuniary benefit, namely contracting to insure persons, property, or risks located in North Dakota, including collecting premiums for the policy at issue.

6. Venue is proper in the District of North Dakota because a substantial part of the events and transactions giving rise to the controversy occurred in North Dakota, as required by 28 U.S.C. § 1391. Among other things, Defendant delivered the insurance policy at issue to Pro-Mark's offices in North Dakota, Pro-Mark approved and initiated payment of premiums for the policy from North Dakota, and the financial harm to Pro-Mark resulting from Atlantic's wrongful conduct occurred and is occurring in North Dakota.

## FACTUAL BACKGROUND

### Pro-Mark's Business

7. Founded in 2001 by Connie and Kyle Berg, Pro-Mark provides design, construction and maintenance services to government facilities located in multiple states, including Montana, Wyoming, North Dakota, South Dakota, Nebraska, Kansas, Arizona and Colorado. Pro-Mark's primary office is at 3275 Oak Ridge Loop E., West Fargo, North Dakota.

8. Between 2007 and 2020, Pro-Mark was solely owned by Connie Berg.

9. In 2009, the Small Business Administration certified Pro-Mark under Section 8(a) of the Small Business Act as a small, socially disadvantaged business.

10. In August 2020, Pro-Mark's owner, Connie Berg, sold the company to the employees, and Pro-Mark became a 100% employee-owned company or "ESOP." The ESOP owns 100 percent of Pro-Mark's stock and is managed and administered by a trust.

11. As an employee-owned company, Pro-Mark continues to serve the United States Government by handling design, construction, and maintenance projects.

12. Currently, Pro-Mark has approximately 30 employees. These staff depend on Pro-Mark for their livelihood, including a number of whom are long-term employees who have been with the company for 10 years or more.

### The Insurance Policy

13. To protect the company and its employees, Pro-Mark purchased directors & officers ("D&O") insurance.

14. Atlantic sold Pro-Mark Management Liability Policy No. MML-20505-21 with express "Directors, Officers & Organization Liability" coverage for the period of August 28, 2021 to August 28, 2022 (the "Policy"). (**Exhibit A**). Subject to its terms and conditions, the

Policy provides $3 million[2] in coverage excess of a $15,000 retention for Insured Person Indemnified Liability Coverage (Coverage B) and Organization Liability Coverage (Coverage C).

15. As noted, the Policy provides coverage to Pro-Mark as the "Organization." This coverage grant is defined under Insuring Agreement (C):

> **(C) Organization Liability Coverage:**
>
> The Underwriter will pay, on behalf of the Organization, Loss from any Organization Claim first made against the Organization during the Policy Period or applicable Extended Reporting Period for a Wrongful Act; provided, that such Organization Claim is reported to the Underwriter in accordance with Section VII of this Coverage Section.

16. An "Organization Claim" is a sweepingly broad term defined in the Policy to include:

> (1) any written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations or request for mediation);
>
> (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief commenced by:
>
> > (a) the service of a complaint or similar pleading;
> >
> > (b) the return of an indictment, information or similar document (in the case of a criminal proceeding); or
> >
> > (c) the filing of a notice of charges, formal investigative order or similar document, against the Organization for a Wrongful Act;
>
> provided, that Organization Claim does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

---

[2] Pro-Mark also purchased an additional $500,000 in liability coverage for Executives for Claims made against any Executive under Insuring Agreement A (Non-Indemnified Insured Person Indemnified Liability Coverage).

17. The Policy also provides coverage to individual directors and officers (and other Insured Persons) for indemnified and non-indemnified liability. The Insured Person Indemnified Liability Coverage is defined as:

> **(B) Insured Person Indemnified Liability Coverage:**
>
> The Underwriter will pay, on behalf of the Organization, Loss for which the Organization grants indemnification to an Insured Person, as permitted or required by law, from any Insured Person Claim first made against an Insured Person during the Policy Period or applicable Extended Reporting Period for a Wrongful Act; provided, that such Insured Person Claim is reported to the Underwriter in accordance with Section VII of this Coverage Section.

18. The Policy defines an "Insured Person Claim" as:

> (1)(a) a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations or request for mediation); or
>
> (b) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief commenced by:
>
> > (a) the service of a complaint or similar pleading;
> >
> > (b) the return of an indictment, information or similar document (in the case of a criminal proceeding); or
> >
> > (c) the filing of a notice of charges, formal investigative order or similar document,
>
> against an Insured Person for a Wrongful Act;
>
> (2) a civil, criminal, administrative or regulatory investigation of an Insured Person for a Wrongful Act commenced by the service upon or other receipt by such Insured Person of a written notice from the investigating authority (including any "Wells" notice) specifically identifying such Insured Person as a target individual against whom a civil, criminal, administrative or regulatory proceeding may be commenced[.]

19. The term "Wrongful Act" is also defined expansively to include, in relevant part:

"(1) any actual or alleged act, error, omission, misstatement, misleading statement or breach of

duty by any Insured Person in his or her capacity as such, or any matter asserted against any Insured Person solely by reason of his or her status as such; (2) for the purposes of Insuring Agreement (C) of this Coverage Section, any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Organization; or (3) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by any Executive in his or her Outside Capacity."

    20.    The Policy defines "Loss" as:

(1) for purposes of coverage under Insuring Agreements (A), (B) and (C) of this Coverage Section, Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a covered Claim, including but not limited to:

    (a) monetary damages (including punitive or exemplary damages or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the Insureds, this Policy or the Claim giving rise to such damages and which is most favorable to the insurability of such damages);

    (b) judgments;

    (c) settlements;

    (d) pre- and post-judgment interest;

    (e) Corporate Manslaughter Costs; and

    (f) civil penalties levied against an Insured Person pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act.

Solely with respect to an Executive and for purposes of coverage under Insuring Agreements (A) and (B) of this Coverage Section, Loss shall also include Asset Protection Costs and Personal Reputation Expenses that arise out of a covered Claim[.]

    21.    The Policy does not have any applicable exclusions to coverage.

**Pro-Mark Receives a Search Warrant and Government Subpoena**

22. On March 3, 2022, Pro-Mark received both a search warrant and grand jury subpoena, as part of a coordinated effort by the Federal Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ") Antitrust Division, Chicago Office.

23. The FBI search warrant was authorized on March 1, 2022 ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ (the "Search Warrant") (**Exhibit B**). Two days later, FBI investigative officers went to Pro-Mark's offices to conduct "court-authorized law enforcement activity."

▪ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▪ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▪ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▪ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

29. The same day as the FBI raid, March 3, 2022, a federal grand jury issued a grand jury subpoena to Pro-Mark ███████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████

 • ███ ██████████████████████████████████████████████████

 ███████████████████████████████████████████████████████

 ████████████████████████████████████████

 • ███ ████████████████████████████████████████████

 ██████████████████████████████████████████████████████████

 ███████████████████████████████████████████████████████

 ████████████████████████████████████████████████████

 ██████████████████████████████████████████████████████

 ████████████████████████████████████████████████████████

 ████████████████████████████████████████████████

 ██████████████████████████████████████████████████████

 ██████████████████████████████████████████████████████

 █████████████████████████████████████████████████

 • ███ ██████████████████████████████████████████████

 ██████████████████████████████████████████████████████

 ████████████████████████████████████████████████████████

 █████████████████████████████████████████████████████████

 ███



**Pro-Mark's Coverage Claim and Atlantic's Refusal to Honor its Coverage Obligations**

37. The Subpoena and Search Warrant constitute Claims first made against Pro-Mark during the Policy Period for a Wrongful Act. Pro-Mark incurred and continues to incur Defense Costs (which constitute Loss under the Policy) in response to these covered Claims.

38. On March 28, 2022, Pro-Mark provided notice to Atlantic of the Subpoena and Search Warrant Claims, which Atlantic acknowledged on March 30, 2022.

39. Meanwhile, Pro-Mark and its individual directors and officers were forced to retain counsel and begin negotiating with the DOJ in response to the DOJ's demands. To meet

the Subpoena's April 20, 2022 court-mandated production deadline, Pro-Mark had to start collecting and processing documents immediately.

40. Pro-Mark continued to update Atlantic on the productions and related accruing legal costs, seeking approval of costs associated with counsel and vendors. Atlantic declined to opine on these retentions, instead reserving its rights and leaving Pro-Mark to fend for itself, while delaying its coverage determination.

41. As a small company without an in-house Legal function, Pro-Mark has had to rely completely on outside counsel to advise on and manage its defense, resulting in substantial legal fees, particularly when viewed in light of the company's revenues.

42. On May 10, 2022, Atlantic finally provided Pro-Mark with its coverage position, denying coverage for the Claim. Without explanation, Atlantic stated that the Subpoena did not constitute an "Organization Claim," despite the Policy definition clearly encompassing the Subpoena. Confusingly, Atlantic then conflated the Policy's different coverage grants, suggesting that an Organization Claim did not yet exist because no *individual Insured Person* had received a target letter despite the Policy separately insuring Claims *against the Organization*. Atlantic failed to address coverage for the Search Warrant entirely. In the end, instead of undertaking Pro-Mark's defense, as required by the terms of the Policy, Atlantic dodged its coverage obligation by recategorizing Pro-Mark's notice of a covered Claim as a "notice of circumstances."

43. On June 28, 2022, Pro-Mark countered Atlantic's improper coverage denial. First, Pro-Mark highlighted the Policy's broad promise to provide coverage for any "written demand for non-monetary relief." Pro-Mark explained that under this Policy language – and

relevant Eighth Circuit precedent – Atlantic's broad duty to defend was triggered by the Subpoena and Search Warrant.

44. Second, Pro-Mark directed Atlantic to the second clause of the Policy's "Organization Claim" definition, namely where Atlantic promises to provide coverage for a proceeding "commenced by the filing of a notice of charges, formal investigative order, or similar document." Here, it is undisputed that the DOJ initiates a case through a Grand Jury subpoena (or Search Warrant), and as such, the Subpoena and Search Warrant are akin to a formal investigated order or, at an absolute minimum, a "similar document."

45. Third, Pro-Mark responded to Atlantic's puzzling invocation of the Insured Person Claim coverage grant, noting that nothing in a different, separate coverage grant or definition (like the Insured Person coverage grant) acted as an exclusion to or limit on the Organization Claim coverage grant.

46. Pro-Mark emphasized that the Subpoena and Search Warrant each qualified as an independent coverage-triggering event, but when taken together, there was no question that Pro-Mark faced a covered Claim by the Government for alleged Wrongful Acts, entitling Pro-Mark to coverage under the Policy. Accordingly, Pro-Mark asked Atlantic to reverse its denial.

47. On July 18, 2022, Atlantic responded to Pro-Mark, maintaining its improper coverage denial and failing to address meaningfully any of Pro-Mark's factual or legal bases for coverage.

48. Throughout this time, Pro-Mark apprised Atlantic of the extreme and unwarranted strain on Pro-Mark's business caused by Atlantic's failure to honor its coverage obligations. ███████████████████████████████████████████████████████████████ ████████ These costs should have been paid by Atlantic directly. Yet, Atlantic has

forced Pro-Mark to bear the burden of these covered costs, at risk to the viability of Pro-Mark's overall business, by improperly withholding owed coverage for the Defense Costs. Atlantic has waived all rights to question the reasonableness of the attorney rates or scope of work undertaken by Pro-Mark defense counsel in light of its failure to honor its coverage obligations.

49. In addition to Atlantic's unreasonable conduct described above, upon information and belief, Atlantic may have further breached its duty of good faith and fair dealing by other acts or omissions that Pro-Mark has not yet discovered.

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT

50. Pro-Mark incorporates the allegations stated in the above paragraphs as if fully set forth herein.

51. Both the Subpoena and Search Warrant qualify as Organization Claims under the Policy.

52. The Search Warrant is a written demand for non-monetary relief. ███████████ ████████████████████████████████████████████████ Accordingly, the Search Warrant is a covered Claim as defined in the Policy. Alternatively, the Search Warrant is a formal investigative order or similar document.

53. The Subpoena also is a written demand for non-monetary and injunctive relief. It demands ████████████████████████████████████████████████████ ████████████████████████████████████████████ The Subpoena also demands that Pro-Mark ████████████████████████ ████████████ Accordingly, the Subpoena is a covered Claim as defined in the Policy. Alternatively, the Subpoena is a formal investigative order or similar document.

12

███

55. The reasonable and necessary costs of defending against the DOJ and FBI's demands are covered Defense Costs and therefore constitute covered Loss under the Policy.

56. Pro-Mark's incurred Defense Costs exceed the Policy's applicable retention, and Pro-Mark complied with all other applicable Policy conditions.

57. Nevertheless, Atlantic wrongly refuses to undertake the defense of Pro-Mark and continues to withhold reimbursement of the covered amounts Pro-Mark has incurred to date.

58. By reason of the foregoing, Atlantic is in breach of its contractual obligations under the Policy, and Pro-Mark has incurred damages as a direct result of that breach. Specifically, Atlantic's breach of contract has caused Plaintiff direct and consequential damages ███ and caused Plaintiff to incur costs and attorneys' fees.

## COUNT II:  DECLARATORY JUDGMENT

59. Pro-Mark incorporates the allegations stated in the above paragraphs as if fully set forth herein.

60. Pro-Mark's defense of this Claim is ongoing.  The Claim triggered Atlantic's duty to defend Pro-Mark in excess of the retention.

61. Section 1 of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., provides in relevant part:

> In case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

62. Because Atlantic has refused to acknowledge coverage for the Defense Costs incurred in connection with the Subpoena and Search Warrant, an actual controversy exists by and among Pro-Mark and Atlantic regarding Atlantic's coverage obligations.

63. Pro-Mark therefore seeks a declaration that coverage under the Policy is triggered by the Subpoena and Search Warrant, and Atlantic must pay all reasonable and necessary costs defending this Claim, including past and future costs.

## PRAYER FOR RELIEF

WHEREFORE, Pro-Mark respectfully prays for the following:

A. Judgment in favor of Pro-Mark and against Atlantic in an amount to exceed $75,000;

B. A declaration that Pro-Mark has submitted a covered claim, and Atlantic must pay up to its applicable Policy limits for covered Defense Costs that Pro-Mark has incurred and will incur in the future defending the Claim;

C. An order awarding Pro-Mark such other and further relief as the Court deems just and proper, including but not limited to, pre-judgment and post-judgment interest at the applicable rate for amounts due and owing, and attorneys' fees, costs and expenses associated with bringing this case.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Pro-Mark hereby demands a trial by jury on all issues so triable.

Dated:  September 28, 2022         Respectfully submitted,

                                   BORMANN, MYERCHIN, ESPESETH &
                                   EDISON, LLP.

*/s/*
Christopher Edison
P.O. Box 995
418 E. Broadway Avenue, Suite 240
Bismarck, ND 58502-0995
Tel:	(701) 250-8968
Fax:	(701) 250-8982
Chris.edison@bmellp.com

Kristin C. Davis (*pro hac vice* to be submitted)
Gary Thompson (*pro hac vice* to be submitted)
THOMPSON HAMMERMAN DAVIS LLP
1015 15th Street NW, Suite 600
Washington, DC 20005
Tel: (202) 367-6178
Fax: (202) 318-5356
kdavis@thompsonhd.com
gthompson@thompsonhd.com

*Attorneys for Plaintiff Pro-Mark Services, Inc.*